**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ADMINTERMARE, A DIVISION OF ADM INTERNATIONAL, SARL** | § § § | |
| **PLAINTIFF,** | § § | C.A. No. 4:19-cv-2238 |
| | § § | **Admiralty 9(h)** |
| v. | § § | |
| **KAMCA TRADING SA; and GLENCORE LTD.,** | § § § § | |
| **DEFENDANTS** | § § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, ADMIntermare, a division of ADM International, Sarl ("ADM Intermare"), files this Original Complaint against Defendants, Kamca Trading SA and Glencore Ltd., and alleges as follows.

## JURISDICTION AND VENUE

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction under 28 U.S.C. §1333.

2. Venue is proper in this Court under 28 U.S.C. §1391(b) because one of the Defendants resides in this district. Venue is also proper under 28 U.S.C. §1391(c)(3) because one of the Defendants is a foreign entity that does not reside within the United States.

## PARTIES

3. Plaintiff, ADM Intermare, at all material times to this action was and is a foreign company duly organized and operating under foreign law with its principal place of business in Rolle, Switzerland. ADM Intermare was the time charterer of the M/V SFL Yukon ("SFL Yukon" or "Vessel").

4. At all material times, upon information and belief, Defendant Kamca Trading SA ("Kamca"), is a company organized and existing under the laws of Switzerland, with a principal place of business at Rue des Pilettes 1, Fribourg, 1700, Switzerland. Kamca may be served with process pursuant to Federal Rule of Civil Procedure 4 and Texas state law for service of process.

5. At all material times, upon information and belief, Defendant Glencore Ltd. ("Glencore") was and is a corporation organized under Delaware law with its principal office located at 3 Stamford Plaza, 301 Tresser Boulevard, Stamford, Connecticut 06901. Glencore is authorized to do business in this state, systematically does business within this district, and has a principal office in this district. Glencore may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. Seventh Street, Suite 620, Austin, Texas 78701-3218.

## FACTS

6. On or about June 14, 2018, and subsequently modified on or about June 20, 2018, Plaintiff as buyer entered into a contract with Kamca as seller, in which Kamca agreed to supply the Vessel with 980 metric tons of RMG380 bunker fuel, along with 90 metric tons of MGO bunker fuel. A copy of the bunker confirmation contract is attached to this Complaint as Exhibit 1. The contract required Kamca to deliver fuel meeting the quality specifications of industry standards

for marine fuel and the standards of ISO 8217-2010. The bunker confirmation contract is a maritime contract.

7. Upon information and belief, in order to fulfil its obligation to deliver the fuel, Kamca obtained the bunker fuel from Defendant Glencore.

8. On or about June 22, 2018, Kamca delivered approximately 980 metric tons of RMG380 bunker fuel and approximately 90 tons of MGO bunker fuel to the Vessel at the Balboa Anchorage in Panama. A Bunker Delivery Receipt was issued on June 22, 2018, memorializing the delivery of this fuel to the Vessel. A copy of the Bunker Delivery Receipt is attached to this Complaint as Exhibit 2. Upon information and belief, this fuel, delivered by Kamca to the Vessel, was contaminated, unsuitable, substandard, defective, unfit, non-conforming, and off-specification (hereinafter "Contaminated Fuel").

9. Upon information and belief, Kamca produced, manufactured, stored, blended, sold, supplied, and/or delivered the Contaminated Fuel.

10. Upon information and belief, Glencore produced, manufactured, stored, blended, sold, and/or supplied the Contaminated Fuel.

11. The Vessel owners have asserted claims against ADM Intermare for alleged damage to the Vessel's main engines and related damages caused by using the fuel supplied to the Vessel by Defendants. Plaintiff chartered the Vessel from its disponent owner, Nordic Bulk Carriers A/S ("Nordic Bulk"). Pursuant to the charterparty between ADM Intermare and Nordic Bulk, ADM Intermare was required to provide and pay for all the fuel. Nordic Bulk instituted arbitration proceedings in London, pursuant to the charterparty, on or about May 28, 2019, seeking

damages in the amount of approximately $900,000 from ADM Intermare for allegedly providing the Contaminated Fuel to the Vessel.  Upon information and belief, head owners of the Vessel have initiated arbitration proceedings in London against Hyundai Co. Limited, and Hyundai is proceeding against Nordic Bulk, asserting the same claim for allegedly providing Contaminated Fuel that caused damage to the Vessel and head owners.

12.    Upon information and belief, after the Vessel began consuming the fuel supplied by Defendants in Panama, the Vessel suffered a fuel pump seizure and main engine problems on or about July 12, 2018.  While using the Contaminated Fuel supplied by Defendants, the Vessel continued suffering fuel pump seizures, main engine purifier problems, and eventually a complete blackout and engine failure during the time from July 12, 2018 through July 27, 2018, while the Vessel was at sea en route from Panama to its intended discharge ports of Ningbo and Nansha in China.  The Vessel diverted to Busan, Korea to perform repairs of the Vessel's main and generator engines and fuel pumps.  Nordic Bulk and the Vessel head owners allege that all these fuel pump and main engine problems, repair costs, loss of charter hire, and associated damages were caused by fuel provided by ADM Intermare as charterer, which is the Contaminated Fuel provided by Defendants at Panama.

13.    On or about July 19, 2018, Plaintiff gave notice to Kamca of the Vessel's main engine issues and that the problems suffered by the Vessel appeared to be caused by off-specification fuel supplied by Kamca.  On or about July 20, 2018, Kamca was invited to attend joint fuel sample testing that Vessel Owners intended to conduct at a lab in Singapore.  On or about July 23, 2018, Kamca acknowledged receipt of notice of the claim, but declined to attend the lab testing in Singapore.  During subsequent weeks, Plaintiff gave additional notices of claim to

Kamca and provided information to Kamca as received from the Vessel Owners. Kamca has denied liability for damage caused by the Contaminated Fuel.

14. Upon information and belief, Kamca purchased the fuel from Glencore. Upon information and belief, Kamca put Glencore on notice of the claim for damages to the Vessel caused by the Contaminated Fuel.

15. On or about August 10, 2018, Plaintiff redelivered the Vessel to Nordic Bulk, ending Plaintiff's charter of the Vessel.

16. Plaintiff has submitted demand to Kamca with respect to the damages incurred by Kamca's failure to sell and supply bunker fuel meeting the proper and contracted specifications. However, Kamca has not accepted responsibility to Plaintiff for its losses and has not accepted responsibility for Plaintiff's potential liability to Nordic Bulk.

17. Plaintiff was without fault in causing and/or contributing to the damages asserted in this Complaint.

18. Nordic Bulk and the Vessel Owners have provided Plaintiff with reports of testing Vessel fuel samples that indicate the fuel supplied by Defendants was contaminated with high levels of non-hydrocarbon compounds, and that the fuel was off-specification, defective, unsuitable, not safe, unsatisfactory, and not of a quality fit for burning and use as marine fuel on board the Vessel.

19. Plaintiff sent Kamca copies of the lab test reports indicating that the bunkers provided by Defendants were contaminated. Plaintiff sought Kamca's assistance to facilitate

Vessel owners debunkering the Contaminated Fuel. Upon information and belief, the Vessel eventually debunkered the Contaminated Fuel at Singapore on or about January 2019.

20. The contamination of the bunker fuel was legally caused by the acts, omissions, faults, or other conduct of Kamca and Glencore, by Kamca's breaches of the applicable contract, and by the Defendants' negligent acts or failures to act. The source of all damages, costs, and expenses incurred, and which may be incurred, by Plaintiff is the Defendants' provision of contaminated, unsuitable, substandard, defective, unfit, non-conforming, off-specification bunker fuel.

21. Plaintiff paid Kamca the full purchase price for the bunker fuel supplied at Panama and fulfilled all of its obligations under its contract with Kamca. Plaintiff has complied with all conditions precedent to the maintenance of all causes of action asserted in this Complaint.

**FIRST CAUSE OF ACTION- BREACH OF CONTRACT**

22. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

23. Plaintiff and Kamca formed a contract for the sale and purchase of the fuel.

24. Kamca breached that contract by delivering to the Vessel fuel that was contaminated, defective, and off-specification, and that was not suitable for use.

25. As a direct result of Kamca's breach of contract, Nordic Bulk claims against ADM Intermare that the Vessel suffered physical damage to its fuel pumps, fuel system, and to its engines and engine components, and that Nordic Bulk and Vessel owners suffered additional direct and consequential damages. Defendants are responsible to Nordic Bulk and the Vessel owners for all

their damages.  Pursuant to the charterparty between Plaintiff and Nordic Bulk, Plaintiff may be contractually liable to Nordic Bulk for these alleged damages.  All these elements of damages were the foreseeable result of Kamca's breach of contract by delivering the Contaminated Fuel to the Vessel.

26. Plaintiff has incurred damages to investigate Nordic Bulk's claims, for fuel sample testing and attendance of marine surveyors, and to defend the London arbitration brought by Nordic Bulk, and these damages are caused by Kamca's breach of contract.  In the event that Plaintiff is held liable to Nordic Bulk or the Vessel owners, Kamca's breach of contract is the cause of the arbitration award and all damages suffered by Plaintiff, including Plaintiffs' reasonable attorneys' fees in this action and in the arbitration proceedings, for which Kamca is liable to Plaintiff in an amount that may be finally determined by this Court.

## SECOND CAUSE - BREACH OF WARRANTIES and MISRPRESENTATION

27. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

28. The bunker confirmation confirming Plaintiff's order of the bunkers from Kamca expressly represented and warranted that the quality of the bunkers would meet the standard and specifications for marine fuel set forth in ISO 8217-2010, and the contract required the fuel to meet industry quality standards for marine fuel.

29. Kamca further represented and warranted that the bunkers were compliant with the relevant regulations of Annex VI of MARPOL 73/78.

30. By delivering to the Vessel marine fuel that did not meet the standards and specifications for marine fuel set forth in ISO8217-2010 and industry standards, Kamca breached the express quality warranties in the contract.

31. Since the bunkers were defective, not suitable for use, dangerous, contaminated, and did not reasonably conform with the ordinary buyer's expectations, Kamca breached the implied warranties of fitness and merchantability.

32. Defendants' provision of Contaminated Fuel that did not meet the standards and quality specifications of ISO 8217-2010 and of industry standards for marine fuel constitutes a material misrepresentation by Kamca and Glencore as to the quality, specifications, and/or fitness for purpose of the marine fuel, which was relied upon by Plaintiff to its detriment. Defendants knew, or should have known, about the contaminated, defective, unsuitable, substandard, dangerous condition of the fuel. Plaintiff is entitled to recover from Defendants its damages caused by the intentional and/or negligent and/or fraudulent misrepresentation of the quality and nature of the Contaminated Fuel.

33. If the Vessel and its Owners suffered physical damage to the Vessel, fuel pumps, fuel system, and to its engines and engine components, and if the Vessel and its Owners suffered loss of charter hire and other damages as alleged in their arbitration proceedings, then these damages were a direct, foreseeable result of Kamca's and Glencore's breach of warranties and misrepresentations.

34. If Plaintiff is liable to Nordic Bulk and the Vessel Owners for their alleged damages claimed in the arbitration, then Plaintiff's liability and damages are a direct, foreseeable result of Kamca's and Glencore's breach of warranties and misrepresentations.

35. Plaintiff has incurred damages to investigate Nordic Bulk's claims, for fuel sample testing and attendance of marine surveyors, and to defend the London arbitration brought by Nordic Bulk, and these damages are caused by Defendants' breaches of warranties and material misrepresentations. In the event that Plaintiff is held liable to Nordic Bulk or the Vessel owners, Defendants' breaches of warranties and material misrepresentations are the cause of all damages suffered by Plaintiff, for which Defendants are liable to Plaintiff in an amount that may be finally determined by this Court.

### THIRD CAUSE OF ACTION – NEGLIGENCE

36. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

37. As suppliers of marine fuel, Kamca and Glencore had a duty to provide to the Vessel marine fuel that was suitable and safe for use and not off-specification or contaminated.

38. Kamca and Glencore breached this duty by delivering to the Vessel marine fuel that was off-specification, contaminated, unsuitable, unsafe, and which did not conform with applicable specifications and regulations.

39. As a direct result of Defendants' breach of duty, Nordic Bulk and the Vessel owners allege that the Vessel suffered physical damage to its fuel pumps, fuel system, and to its engines and engine components, and that Nordic Bulk and the Vessel owners suffered loss of hire and other damages.

40. If Plaintiff is held liable to Nordic Bulk and/or the Vessel owners, Plaintiff's liability and damages are a direct, forseeable result of Kamca's and Glencore's breaches of duty.

41. Plaintiff has incurred damages to investigate Nordic Bulk's claims, for fuel sample testing and attendance of marine surveyors, and to defend the London arbitration brought by Nordic Bulk, and these damages are caused by Defendants' negligence and breaches of duty.  In the event that Plaintiff is held liable to Nordic Bulk or the Vessel owners, Defendants' negligence and breaches of duty are the cause of all damages suffered by Plaintiff, for which Defendants are liable to Plaintiff in an amount that may be finally determined by this Court.

## **FOURTH CAUSE OF ACTION – PRODUCT LIABILITY**

42. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43. Kamca and Glencore are manufacturers and sellers of marine fuel, specifically the fuel that was provided to the Vessel that is the subject of this Complaint.

44. The fuel that Kamca and Glencore manufactured, sold and provided to the Vessel was inherently defective, off-specification, contaminated, unsuitable, unsafe, and did not conform with applicable specifications and regulations.

45. The fuel that Kamca and Glencore manufactured, sold, and provided to the Vessel was defectively designed, defectively manufactured, and defectively marketed because the fuel was contaminated, off-specification, unsuitable, and unsafe for use as marine fuel.

46. Defendants Kamca and Glencore failed to warn Plaintiff or the Vessel of the contaminated, defective, and dangerous nature of the fuel that was manufactured, sold, and provided to the Vessel by Kamca and Glencore, and their failure to warn constitutes an additional product defect.

47. The Contaminated Fuel manufactured, sold, and provided to the Vessel by Defendants constitutes a defective product, and Defendants are liable to Plaintiff for selling, manufacturing, and providing a defective product causing harm.

48. As a direct result of the product defects in the fuel manufactured, sold, and provided to the Vessel by Kamca and Glencore, Nordic Bulk and the Vessel Owners allege claims in arbitration against Plaintiff that the Vessel suffered physical damage to its fuel pumps, fuel system, and to its engines and engine components, and that Nordic Bulk and the Vessel Owners suffered additional direct and consequential damages, for which they seek to hold Plaintiff liable.

49. Plaintiff has incurred damages to investigate Nordic Bulk's claims, for fuel sample testing and attendance of marine surveyors, and to defend the London arbitration brought by Nordic Bulk, and these damages are caused by the defective product manufactured, sold, and provided to the Vessel by Kamca and Glencore.

50. In the event that Plaintiff is held liable to Nordic Bulk or the Vessel Owners, this liability and all damages suffered by Plaintiff are a direct result of the defective Contaminated Fuel manufactured, sold, and provided to the Vessel by Kamca and Glencore.

51. The damages suffered, and which may be incurred, by Plaintiff were all foreseeable to Kamca and Glencore as the manufacturer, seller, and supplier of the defective fuel.

52. Defendants' defective product is the cause of all damages suffered by Plaintiff, for which Defendants are liable to Plaintiff in an amount that may be finally determined by this Court.

## FIFTH CAUSE OF ACTION – INDEMNITY and CONTRIBUTION

53. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54. Nordic Bulk, as disponent owner of the Vessel, is currently pursuing pending arbitration proceedings in London against Plaintiff, seeking to recover from Plaintiff, under the charterparty between Plaintiff and Nordic Bulk, at least approximately $900,000 in damages allegedly caused by the provision of Contaminated Fuel to the Vessel.  Upon information and belief, head owners of the Vessel are pursuing arbitration proceedings in London against Hyundai Co. Limited, and Hyundai is proceeding against Nordic Bulk, asserting the same claim for allegedly providing Contaminated Fuel that caused damage to the Vessel and head owners.

55. The arbitration proceedings currently pending in London are current claims against Plaintiff, which arise out of the Contaminated Fuel provided to the Vessel by Defendants, that cause Plaintiff to suffer damages and expense to investigate and defend the arbitration proceedings. Defendants are liable to Plaintiff in indemnity or contribution for all these damages currently being suffered by Plaintiff.

56. If it is decided in the arbitration proceedings that Plaintiff is liable to Nordic Bulk or Vessel owners for providing Contaminated Fuel to the Vessel, or for any other reason, Plaintiff is entitled to recover from Defendants, in contribution or indemnity, the full amount of any arbitration award rendered against Plaintiff, together with all losses, damages, expenses, attorneys' fees, costs, and interest associated with the arbitration award and Plaintiff's damages.

57. Plaintiff is entitled to indemnity from Defendants for these losses under contractual, equitable, legal, statutory, general maritime law, and/or common law principles for contribution and/or indemnity because Kamca's breach of contract, Defendants' breach of warranties and misrepresentations, and Defendants' conduct and legal faults for providing Contaminated Fuel to the Vessel are the cause of all these losses and damages.

58. Plaintiff is entitled to recover damages for indemnity and/or contribution from Defendants in an amount to be determined by the Court.

## **PRAYER FOR RELIEF**

59. Therefore, Plaintiff ADM Intermare prays for judgment against Defendants Kamca and Glencore, and that Defendants be held liable jointly and severally, as follows:

(a) Enter judgment in favor of Plaintiff ADM Intermare against Defendants Kamca and Glencore for damages as may be finally determined by this Court, together with pre-judgment interest, post-judgment interest, reasonable attorneys' fees, and costs; and

(b) That the Court grant such other and further relief as may be just and proper in the circumstances.

Dated: June 21, 2019

          Respectfully submitted,

          **HOLMAN FENWICK WILLIAN USA LLP**

          <u>/s/ Gerard J. Kimmitt, II</u>
          Gerard J. Kimmitt, II
          Fed. ID No. 08454; TBA 11427500
          Email: jerry.kimmitt@hfw.com
          Christopher R. Hart
          Fed. ID No. 12517; TBA 09136310
          Email: chris.hart@hfw.com
          5151 San Felipe, Suite 400
          Houston, Texas 77056
          Telephone: (713) 917-0888
          Telefax: (713) 953-9470
          **ATTORNEY-IN-CHARGE FOR PLAINTIFF, ADMINTERMARE, A DIVISION OF ADM INTERNATIONAL, SARL**