UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADMINTERMARE,
                         Plaintiff,

-v-

KAMCA TRADING S.A., *et al.*,
                         Defendants.

20-CV-1223 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    ADMIntermare brings this maritime action against Kamca Trading S.A. ("Kamca") and Glencore Ltd. ("Glencore"), alleging that Kamca supplied ADMIntermare with defective fuel, in breach of a contract between the two parties. The defective fuel, which ADMIntermare alleges that Kamca received from Glencore, purportedly damaged a vessel that ADMIntermare operated as a time charterer. Kamca and Glencore each move to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, both motions are granted.

**I.    Background**

    **A.    Factual Background**

    The following facts are drawn from ADMIntermare's amended complaint, as well as documents incorporated by reference, and are assumed true for the purposes of these motions.

    ADMIntermare is a foreign company duly organized and operating under foreign law, with its principal place of business in Switzerland. (*See* Dkt. No. 10 ¶ 3.) ADMIntermare was the time charterer of the M/V SFL Yukon (the "Vessel"). (*See id.*) Kamca is a company organized and existing under the laws of Switzerland, also with a principal place of business in

1

Switzerland. (*See* Dkt. No. 10 ¶ 4.) Glencore is a corporation organized under Delaware law, with a principal place of business in Connecticut. (*See* Dkt. No. 10 ¶ 5.)

In June 2018, ADMIntermare and Kamca entered into a contract, in which Kamca agreed to supply the Vessel with 980 metric tons of RMG380 bunker fuel, along with 90 metric tons of MGO bunker fuel. (*See* Dkt. No. 10 ¶ 6.) The contract required Kamca to deliver fuel meeting the quality specifications of industry standards for marine fuel and the standards of ISO 8217-2010. (*See id.*) Kamca's General Terms and Conditions ("GT&C"), incorporated into the contract between the parties, gave ADMIntermare twenty-one days from the date of delivery to provide notice of a quality dispute. (*See* Dkt. No. 65-1 ¶ 10.3.) The GT&C further stated that a failure to provide timely notice would bar ADMIntermare from making a claim. (*See* Dkt. No. 65-1 ¶ 10.12.)

To fulfill its contractual obligation, Kamca obtained fuel from Glencore. (*See* Dkt. No. 10 ¶ 7.) Kamca delivered the fuel to ADMIntermare on June 22, 2018. (*See* Dkt. No. 10 ¶ 8.) The fuel that Kamca delivered, however, was defective and off-specification. (*See* Dkt. No. 10 ¶¶ 8, 18.) After the Vessel began consuming the fuel supplied by Kamca, it suffered a fuel pump seizure, main engine problems, and eventually a complete blackout and engine failure. (*See* Dkt. No. 10 ¶ 12.) On July 19, 2018, ADMIntermare gave notice to Kamca of these problems, which appeared to be caused by the off-specification fuel that Kamca had supplied. (*See* Dkt. No. 10 ¶ 13.) Following the damages to the Vessel, the Vessel's owner, Nordic Bulk Carriers A/S ("Nordic Bulk"), instituted arbitration proceedings in 2019 against ADMIntermare for providing contaminated fuel. (*See* Dkt. No. 10 ¶ 11.) Pursuant to the charterparty between ADMIntermare and Nordic Bulk, ADMIntermare was required to provide and pay for the Vessel's fuel. (*See id.*) As of the filing of the complaint, there had not yet been a determination of liability, or payment

of an arbitration award, in the arbitration between Nordic Bulk and ADMIntermare. (*See* Dkt. No. 10 ¶ 26.)

    **B.**    **Procedural Background**

ADMIntermare initially filed this action in the Southern District of Texas in 2019. (*See* Dkt. No. 1.) ADMIntermare shortly thereafter filed an amended complaint. (*See* Dkt. No. 10.) ADMIntermare asserts breach of warranty, misrepresentation, negligence, product liability, indemnity and contribution, and equitable subrogation claims against Kamca and Glencore. (*See* Dkt. No. 10 ¶ 27–66.) ADMIntermare also asserts a breach of contract claim against Kamca. (*See* Dkt. No. 10 ¶ 22–26.)

Following a Rule 12 motion to dismiss the case for lack of personal jurisdiction and for insufficient service of process by Kamca (*see* Dkt. No. 23), and a motion to transfer venue by Kamca (*see* Dkt. No. 25), the case was transferred to the Southern District of New York (*see* Dkt. No. 44). Kamca then moved to dismiss the case again, this time for failure to state a claim upon which relief can be granted. (*See* Dkt. No. 64.) Before the case was transferred, Glencore had filed a motion to dismiss on the same grounds (*see* Dkt. No. 14), which is also now before the Court.

**II.**    **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y.

2013) (alteration in original) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.  Discussion

#### A.  Kamca's Motion to Dismiss

ADMIntermare asserts that the Federal Rules of Civil Procedure bars consideration of Kamca's motion because Kamca previously made a motion under Rule 12.  "[A] party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  A mechanical interpretation of Rule 12(g)(2)'s text would thus prohibit Kamca's motion here given its earlier Rule 12 motion.  (*See* Dkt. No. 23.)

Yet "many courts have interpreted these rules permissively and have accepted subsequent motions on discretionary grounds . . . . Such a permissive reading has been justified as comporting with the general spirit of the rules and as promoting the interests of efficiency." *F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp.2d 378, 383 (D. Md. 2009) (collecting cases and citing to Charles Alan Wright & Arthur C. Miller, Federal Practice and Procedure § 1392 (3d ed. 2004)); *see also LaCourte v. JP Morgan Chase & Co.*, No. 12 Civ. 9453, 2013 WL 4830935, at *7–8 (S.D.N.Y. Sept. 4, 2013) (considering successive motions under Rule 12 because there was "nothing to indicate that [the defendant] acted with dilatory intent, and the Court [could] discern no useful purpose that would be served by ruling" on the defenses of one defendant but of another defendant).  In the interest of judicial economy, and because there is no evidence that Kamca acted with dilatory intent, the Court will consider the merits of Kamca's motion.  The arguments and law discussed in Glencore's motion, which is also before the Court now and is

4

not a successive motion, substantially overlap with those discussed in Kamca's motion. Indeed, the two defendants advance numerous identical arguments for why certain causes of action should be dismissed. The Court sees no reason to require Kamca to re-brief its arguments in the form of a motion for judgment on the pleadings or for summary judgment, with the "outcome entirely preordained" on certain causes of action due to this Court's ruling on Glencore's motion to dismiss. *LaCourte*, 2013 WL 4830935, at *8.

Accordingly, the Court turns to the merits of Kamca's motion.[1]

### 1. Breach of Contract and Breach of Warranty

Kamca contends that the Court should dismiss the breach of contract and the breach of warranty claims because ADMIntermare did not give Kamca timely notice of the fuel's quality issue. Kamca's GT&C provided that ADMIntermare had twenty-one days from its receipt of the fuel to notify Kamca of any quality issues. ADMIntermare received the fuel from Kamca on June 22, 2018, but ADMIntermare did not give Kamca notice of a quality issue until twenty-seven days later — on July 19, 2018. Based on the parties' agreement, ADMIntermare's untimely notice forecloses its contract-law claims here.[2] (*See* Dkt. No. 65-1 ¶ 10.12.)

None of ADMIntermare's arguments persuade the Court that it should not enforce the twenty-one-day notice provision that the parties agreed to. ADMIntermare first argues that it pleaded that it complied with all conditions precedent to bring this case. To be sure,

---

[1] ADMIntermare also requests that the Court convert Kamca's motion to dismiss into a motion for summary judgment because Kamca submitted its GT&C, which was incorporated into Kamca's contract with ADMIntermare. (*See* Dkt. No. 66-1.) The Court declines to do so. The Court may consider documents incorporated into the complaint by reference, *see, e.g.*, *Stuto v. Fleishman*, 164 F.3d 820, 826 n.1 (2d Cir. 1999), and ADMIntermare's complaint references and relies upon the contract between the parties here.

[2] The GT&C also "expressly excluded and disclaimed" any implied warranties in the contract. (*See* Dkt. No. 65-1 ¶ 12.3.)

ADMIntermare pleaded such in its complaint (*see* Dkt. No. 10 ¶ 21), and Rule 9(c) states that "it suffices to allege generally that all conditions precedent have occurred or been performed," Fed. R. Civ. P. 9(c).  But the complaint, and the documents incorporated by reference, unequivocally establish that ADMIntermare did not comply with the contractual condition precedent of notifying Kamca within twenty-one days of receiving the fuel — a point that ADMIntermare does not contest.  In fact, ADMIntermare acknowledges that it gave notice twenty-seven days after Kamca delivered the fuel.  (*See* Dkt. No. 68 at 2.)  "[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."  *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (internal quotation marks omitted).  The Court therefore does not accept ADMIntermare's allegation that it complied with the twenty-one-day notice provision.

ADMIntermare next argues that its notice was timely under "governing law," making the untimeliness of its notice under the parties' twenty-one-day notice provision irrelevant.  (*See* Dkt. No. 68 at 7–11.)  For this argument, ADMIntermare primarily relies on *Wilson Trading Corp. v. David Ferguson, Ltd.* 244 N.E.2d 685 (N.Y. 1968).  The *Wilson Trading* court did not enforce a ten-day notice provision in a contract for sale of goods, holding that the clause must give way "to the general [Uniform Commercial Code] rule that a buyer has a reasonable time to notify the seller of breach of contract after he discovers or should have discovered the defect." *Wilson*, 244 N.E.2d at 688.  That court then found that it was a "question of fact" whether notice in that case was given within a reasonable amount of time.  *See id.*

But *Wilson Trading* has been largely criticized.  The Fifth Circuit once observed that in the then-twenty years following *Wilson*, "no other court has followed this decision and

commentators have roundly criticized it." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, n.13 (5th Cir. 1988). Notably, ADMIntermare does not cite a single maritime case that relies upon *Wilson Trading*, nor is the Court aware of any such instance. Courts in this district have also not followed the logic of *Wilson Trading* in cases with contractual notice of defect provisions; they have instead considered whether the provisions *themselves* are manifestly unreasonable under the U.C.C. and enforced those provisions when they are not manifestly unreasonable. *See, e.g.*, *Hangzhou Silk Imp. & Exp. Corp. v. P.C.B. Int'l Indus., Inc.*, No. 00 Civ. 6344, 2002 WL 2031591, at *4 (S.D.N.Y. Sept. 5, 2002) ("Thirty days to register a claim for nonconformity does not strike the court as a manifestly unreasonable timeframe for [plaintiff] to inspect the goods and determine whether they were made to specifications."); *Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hanyu Int'l USA Inc.*, No. 00 Civ. 5585, 2001 WL 883646, at *3–4 (S.D.N.Y. Aug. 7, 2001) (holding that a thirty-day notice period in a contract was reasonable even if the defects in the products were latent). ADMIntermare does not argue that twenty-one days was a manifestly unreasonable amount of time to provide notice of any defects, and this amount of time does not strike the Court as manifestly unreasonable either.

    The Court accordingly dismisses ADMIntermare's breach of contract and breach of warranty claims. The Court also denies ADMIntermare's request to amend its complaint because none of the additional information it would seek to replead (*see* Dkt. No. 68 at 7 n.4) would render timely the notice it gave Kamca, making amendment futile, *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to replead as futile because "better pleading [would] not cure" the complaint's deficiencies).

### 2. Misrepresentation

"[T]he tort of negligent misrepresentation cannot be the basis of liability where [defendant's] sole legal duties to [plaintiff] arose entirely out of a contract. This is so . . . whether resort is had to federal maritime law, or to New York law." *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1283 (2d Cir. 1994) (citations omitted). ADMIntermare does not allege that Kamca owed it any kind of legal duty independent of its contractual duties. Indeed, ADMIntermare's misrepresentation claim is virtually identical to its contract law claim of breach of warranty. For its misrepresentation claim, ADMIntermare pleads that "[d]efendants represented that the fuel met ISO 8217-2010 specifications for RMG380, but this material representation was false" (Dkt. No. 10 ¶ 33); and ADMIntermare pleads the following for its breach of warranty claim: "The bunker confirmation confirming Plaintiff's order of the bunkers from Kamca expressly represented and warranted that the quality of the bunkers would meet the standard and specifications for RMG380 marine fuel set forth in ISO 8217-2010 . . ." (Dkt. No. 10 ¶ 28). Because this misrepresentation claim is "predicated upon precisely the same purported wrongful conduct as is the claim for breach of contract," *Linares v. Richards*, No. 08 Civ. 3243, 2011 WL 13295120, at *16 (E.D.N.Y. June 23, 2011) (internal quotation marks omitted), the claim is dismissed as duplicative.

### 3. Negligence and Products Liability

"In the Second Circuit, the Supreme Court's *Robins Dry Dock & Repair Co. v. Flint* decision, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), has evolved into 'a bright line rule barring recovery for economic losses caused by an unintentional maritime tort absent physical damage to property in which the victim has a *proprietary interest*.'" *VL8 Pool, Inc. v. Glencore Ltd.*, No. 20 Civ. 02053, 2021 WL 1152936, at *4 (S.D.N.Y. Mar. 25, 2021) (internal citations omitted) (quoting *Am. Petroleum & Transp., Inc. v. City of N.Y.*, 737 F.3d 185, 187–88 (2d Cir.

2013)). This *Robins Dry Dock* rule has also been applied to claims under a product liability theory. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874 (1986). As a time charterer of the negligently injured Vessel here, ADMIntermare does not have a sufficient proprietary interest to recover for economic losses. *See Fed. Com. & Nav. Co., Ltd. v. M/V Marathonian*, 528 F.2d 907, 907 (2d Cir. 1975) (affirming judgment on the pleadings that dismissed claims brought by time charterer pursuant to the *Robins Dry Dock*); *see also VL8 Pool, Inc.*, 2021 WL 1152936, at *4–5 (dismissing negligence and product liability claims of time charterer based on damage to vessel pursuant to *Robins Dry Dock*). The Court thus dismisses the negligence and product liability claims.[3]

### 4. Indemnity and Contribution

*Robins Dry Dock* also requires dismissal of ADMIntermare's indemnity and contribution claims. *See G & G Steel, Inc. v. Sea Wolf Marine Transp., LLC*, No. 06 Civ. 1840, 2008 WL 192049, at *6 (S.D.N.Y. Jan. 23, 2008) (holding that *Robins Dry Dock* barred a maritime indemnity claim); *see also Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829–30 (5th Cir. 1992) (noting that indemnity and contribution are "related concepts" distinguishable because indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor" and contribution "requires that each tortfeasor pay the proportion of the damages attributable to its actions").

### 5. Equitable Subrogation

Equitable subrogation entitles a party to reimbursement for discharging a debt for another party who should have paid it. But it is available "only after full payment of the debt owed the

---

[3] In defense of its negligence and product liability claims, ADMIntermare invokes a narrow "loss shifting" exception to *Robins Dry Dock*. But this exception, first discussed in *Amoco Transp. Co. v. S/S Mason Lykes*, 768 F.2d 659, 666 (5th Cir. 1985), is inapposite because it is limited to cases involving collisions between two vessels, *see Cargill, Inc. v. Doxford & Sunderland, Ltd.*, 785 F.2d 1296, 1297–98 (5th Cir. 1986).

subrogor." *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1047 (2d Cir. 1992). ADMIntermare concedes that it has not yet paid anything for the damage to the Vessel (*see* Dkt. No. 10 ¶ 63), so the Court dismisses this claim.

### B. Glencore's Motion to Dismiss

ADMIntermare brings the same causes of action against Glencore as it does against Kamca, with the exception of the breach of contract claim. For the same reasons discussed above, the Court also dismisses ADMIntermare's negligence, product liability, indemnity, contribution, and equitable subrogation claims against Glencore. The Court now turns to the two remaining claims against Glencore: misrepresentation and breach of warranty.

#### 1. Misrepresentation

To prevail on its negligent misrepresentation claim, ADMIntermare must establish that Glencore "at [ADMIntermare's] request supplied information for [ADMIntermare's] guidance." *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 799 F. Supp. 363, 382 (S.D.N.Y. 1992), *aff'd*, 7 F.3d 1077 (2d Cir. 1993). ADMIntermare does not allege that it had any contact with Glencore, let alone that it requested or received information from Glencore. Nor does ADMIntermare allege that its sale contract with Kamca included any information provided by Glencore that it relied upon. ADMIntermare argues that the lack of privity of contract and direct representation between itself and Glencore is not fatal for its misrepresentation claim. The Court agrees. But the case that ADMIntermare primarily cites to for this point underscores what is fatal for its misrepresentation claims — the complete absence of factual allegations that ADMIntermare relied on information supplied by Glencore. *See Otto Candies, LLC v. Nippon Kaija Kyokai Corp.*, No. 01 Civ. 1933, 2002 WL 1798767, at *1, *3 (E.D. La. Aug. 5, 2002), *aff'd sub nom. Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530 (5th Cir. 2003) (involving a sale between the plaintiff and a third party where the defendant's "certification was

a condition of the sale" and the plaintiff "specifically asked for the [defendant's] certification"). Because there is not "a scintilla of evidence . . . that [ADMIntermare] asked [Glencore] to provide it with any information for its guidance," *Sundance Cruises Corp.*, 799 F. Supp. at 382, the Court dismisses the misrepresentation claim against Glencore.

### 2. Breach of Warranty

The Court also dismisses the breach of warranty claim against Glencore, which ADMIntermare does not oppose in its brief, because ADMIntermare does not allege that Glencore gave any express warranties, and "[t]here can be no implied warranty claim because there is no privity between [Glencore] and [ADMIntermare] and [ADMIntermare] has alleged only economic injury." *Fanok v. Carver Boat Corp., LLC*, 576 F. Supp. 2d 404, 413 (E.D.N.Y. 2008).

## IV. Conclusion

For the foregoing reasons, Kamca's and Glencore's motions to dismiss are GRANTED. The letter motion at Docket Number 88 is denied as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 14, 64, and 88, and to close this case.

SO ORDERED.

Dated: March 22, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge